KINGMAN & COMPANY v. WEISER BROTHERS.

FILED JUNE 16, 1896. No. 6661.

Attachment Against Defendants Charged with Fraudulently Disposing of Their Property: ORDER DISCHARGING ATTACHMENT: REVIEW. The evidence examined, and *held* insufficient to sustain the finding and judgment of the trial court.

ERROR from the district court of Thurston county. Tried below before NORRIS, J.

*James H. McIntosh*, for plaintiffs in error.

References: *Smith v. Sands*, 17 Neb., 498; *Beals v. Flynn*, 25 Neb., 578; *Kellogg v. Richardson*, 19 Fed. Rep., 70; *Smith v. Howard*, 20 How. Pr. [N. Y.], 121; *O'Neil v. Salmon*, 25 How. Pr. [N. Y.], 246.

*T. M. Franse* and *A. C. Abbott*, contra.

References: *Kierstead v. Brown*, 23 Neb., 595; *Eldridge v. Hargreaves*, 30 Neb., 638; *Sherer v. Piper*, 26 O. St., 478;

*Jones v. Foxall*, 13 Eng. L. & Eq., 140; *Mayer v. Zingre*, 18 Neb., 458; *Holland v. Commercial Nat. Bank*, 22 Neb., 583; *Johnson v. Steele*, 23 Neb., 82; *Grimes v. Farrington*, 19 Neb., 44; *Armstrong v. Cook*, 54 N. W. Rep. [Mich.], 873; *Caulfield v. Bittinger*, 37 Neb., 542.

HARRISON, J.

Plaintiffs instituted an action against defendants, or the firm of which they were members, in the district court of Thurston county, to recover the amount alleged to be due on a promissory note executed by the firm and delivered to plaintiffs, and caused a writ of attachment to issue in such action, the grounds therefor, as stated in the attachment affidavit, being as follows: "That the said defendants are about to convert their property, or a part thereof, into money for the purpose of putting it beyond the reach of their creditors; and that they have assigned, removed, and disposed of their property, or a part thereof, with the intent to defraud their creditors, and that they have property and rights of action which they conceal." The writ was issued and levied on certain property as the property of the defendant firm. In the action, subsequently to the issue and levy of the writ, a motion to discharge the attachment was filed for the partnership, the reason assigned being that the statements contained in the affidavit were untrue. On a hearing of the motion it was sustained and the attachment ordered discharged. Plaintiffs filed a bond and removed the attachment branch of the case to this court for review of the proceedings of the trial court therein. The sole question presented for determination is, Was there sufficient evidence to sustain the findings of the trial judge on which was based the order discharging the attachment, viz., that the allegations of the affidavit in attachment were not true?

It appears that on and prior to the 24th of October, 1893, James and John Weiser were partners in and conducting a retail hardware business and store in Pender,

Nebraska, and also dealing in agricultural implements; that on or about the date mentioned the firm negotiated a sale or made a transfer of the business, stock of hardware, and agricultural implements to one Bender, the consideration to be received by the firm being a tract of land containing 294 acres, situate in Cuming county, this state. Of this land about thirty acres were under cultivation, and there were buildings on the land, viz., a frame house 16x28 feet and some small sheds. This land was purchased by Bender, July 25, 1893, for the sum of $5,076, it being entirely a time sale, the whole consideration being divided into payments to be made at stated dates subsequent to the time of sale, ending with January 1, 1897. In October, 1893, the land was accepted in the trade for the stock of hardware, etc., at a valuation of $12,076. The stock, which inventoried about $7,000, and the assumption by the firm of the $5,076 deferred payments to be made of the original purchase price of the land, constituting the consideration passing to Bender in the trade. Some witnesses placed the value of the land at the full amount at which it was figured in the deal between the firm and Bender. One witness placed it higher, and one, whose affidavit was presented on the part of the firm, stated the value of the land to be $10,000. There was a bill of sale of the stock of goods to Bender, and a quitclaim deed of the land from Bender to the Weisers; also an assignment to the Weisers of a contract of sale and purchase executed between the prior owner and Bender. We will here give what James Weiser said in his affidavit was a statement of the assets and liabilities of the firm:

| | |
|---|---:|
| The Weiser Block (Opera House)........... | $20,000 00 |
| Block in Main Street Addition............. | 1,600 00 |
| 294 acres of land in Cuming county, Neb.... | 12,076 00 |
| Bills receivable......................... | 9,930 00 |
| Total assets...................... | $43,606 00 |

LIABILITIES.

| | |
|---|---|
| Kingman & Co. | $2,207 25 |
| Other liabilities | 19,882 00 |
| Total liabilities | $22,089 25 |

What is denominated the Weiser Block (Opera House), and valued in the foregoing statement at $20,000, was valued by other witnesses, quite a number of whose affidavits were of record on the part of the Weisers, at $15,-000, two on the part of the plaintiff who stated its value to be $10,000, and one who said it was worth not to exceed $13,000. Prior to the deal between the firm and Bender the opera house, or the building in a room of which the stock of hardware was situated, was incumbered as follows: A first mortgage in the sum of $4,000, of date September 19, 1891, with interest at eight per cent per annum, none of which, it appears, either principal or interest, had been paid. A second mortgage, of date March 1, 1892, in the sum of $1,000, and a third for $907.35, of date July 17, 1893. On the second and third, as on the first, the interest remained unpaid. There was an unpaid balance of purchase consideration for the block in Main Street Addition of $850.

We will now notice some of the conditions existing as to the property of the Weisers as a firm or as individuals, or which arose from transfers made at or about the time of the trade hereinbefore alluded to. All, or practically all, of the bills receivable had been delivered to banks, creditors of the firm, or to other creditors, as collateral security for the payment of the indebtedness of the firm. On October 25, 1893, during the pendency of the trade between Bender and the firm, an assignment of all book accounts, as shown in the ledger, was made, which was evidenced by posting in or attaching to the ledger the following:

"For value received, we hereby sell, assign, and set over to the First National Bank of Pender all our right,

title, and interest in the within book accounts; same to be held by said bank as collateral security.

"Dated this 25th day of October, 1893.

"WEISER BROTHERS,
"By JAMES WEISER."

And afterwards the book was delivered to the bank. A mortgage had been executed by the firm which covered the opera house block, by its terms securing the payment of three promissory notes of one thousand dollars each, payable in one, two, and three years after date, with interest at the rate of six per cent per annum. The notes were of date October 2, 1893, and payable to Margaret Weiser, the mother of the two partners. James Weiser, one of the partners, testified that he received $1,000 in money from his mother in the year 1891 and gave his individual note evidencing the indebtedness thus created, and that the mortgage just referred to was given by the firm "as collateral security for the note that I owed her individually. I applied it in the business." The mortgage was filed and recorded October 24, 1893. The partners were unmarried and had a furnished room or some rooms in which they lived. On October 24, 1893, a bill of sale was executed, which conveyed, or purported to convey, all their furniture, etc., together with some property of the firm (as stated by James Weiser, all their movable property, aside from what was sold to Bender, excepting probably a few small articles), to one Jacob Weiser, a brother of the members of the firm, who lived in Pennsylvania, and who was not in Pender at the time of the execution of the bill of sale, had no agent there, and it is of the evidence of James Weiser, the apparent spokesman for the firm, that the instrument was executed and recorded without any request or suggestion of the grantee that it be done, and the property covered thereby remained in the possession of the partners and was used by them as it had been prior to the transfer. The consideration expressed in this bill of sale was the sum of $400, of which the one-half was the amount of a note

given for the sum therein expressed, $200, received by James Weiser of his brother, Jacob, at some time prior to the transactions of October, 1893. The other one-half, or $200, it was testified, was the aggregate of smaller sums received by James Weiser of Jacob at different times, and as to which no more definite statement was made or account given. The contract of purchase of the vacant block, or lots, in Pender was said to be in possession of a bank as collateral security to an indebtedness of the firm. There was owing by the firm to the plaintiff herein, October, 1893, the amount of the claim on which this action was based, and on the morning of October 26, 1893, a Mr. Buchanan, an agent of the plaintiff, called at the store, and during the course of a conversation then had with James Weiser was told that "they [the firm] had sold out and got a contract deed for an equity in a farm; that they were not getting any money out of it, and that they had made the deed with the purpose and intention of preventing any of their creditors from running an attachment on their goods and taking them all, so that themselves and other creditors would not get anything; that they were making the deal to prevent that; said he had given a mortgage on the real estate to his mother and a bill of sale to his brother." During the evening of the day that the above statement was made Mr. J. H. McIntosh, of Omaha, attorney for plaintiffs, was in Pender for the purpose of collecting or securing their claim against the firm of Weiser Bros. In company with Mr. Buchanan, he called on the firm and had an interview with the partners, or with James Weiser, representing the firm, and he made then substantially the same statement to them which he had made to Mr. Buchanan in the morning, and which we have quoted herein. On the following morning, October 27, 1893, the attorney and the agent for plaintiffs again saw James Weiser, and he again repeated a portion of the statement made the previous day or evening, coupled with a proposition to sell to the plaintiffs, Kingman & Co., the land which the

firm was getting in the trade with Bender. Mr. McIntosh then said to Weiser: "Very well, I wish you would let me take that in writing with me to Omaha;" to which the answer was, "All right," and pen, ink, and paper were procured and the following was written by plaintiffs' attorney:

"PENDER, NEB., 10th month, 27th day, 1893.

"*To Kingman & Co., Omaha, Neb.*—GENTLEMEN: We have traded our hardware and implement business to one Mr. Bender for an equity in a farm of 294 acres four miles and a half from West Point, in Cuming county. We did this to put our property in such shape that one of our creditors could not jump in with an attachment and get everything and leave nothing for our other creditors or ourselves. We expect to clean up everything within sixty or ninety days. As you are our largest creditor, we make you the offer to assign to you our equity in the land we are getting in consideration of forty dollars an acre, you to have credit for your claim against us and to pay us cash for the balance, you returning, of course, the collateral you hold. We are not in position to have you accept this offer for two or three days yet, and until we have completed the transaction here. Also, we beg to say that this offer is confidential, for if our other creditors should hear of it they would be jumping in and giving us trouble.

"Yours truly, WEISER BROS."

This was handed to Mr. Weiser, who, after reading the same aloud, said, "That is all right; that is just what I said," sat down at a desk and signed the firm name to it, as shown on the copy given above. Evidence was introduced on behalf of defendants in the attachment to show the good faith of all the different transfers made by the firm, and the absence of any fraudulent intent in any of the transactions questioned herein. There was no denial, however, of the statements of James Weiser testified to as having been made to the attorney and agent of plaintiffs.

We have given a somewhat extended summary of some of the important points of the evidence and have made a careful examination of the whole, and from our consideration thereof feel forced to conclude that the findings of the district judge on which he based his order dissolving the attachment were manifestly wrong and not sustained by the evidence. There seems to have been an intention, which is plainly indicated by the evidence of the facts and circumstances, to convey or dispose of the property in such manner as to defraud creditors, to hinder and delay them in the collection of claims or debts against the firm, to place the property beyond the reach of the ordinary processes of the law, and the attachment was fully warranted. (*Kellog v. Richardson*, 19 Fed. Rep., 70; *Robinson Notion Co. v. Ormsby*, 33 Neb., 665.)

It is urged that the written statement was an offer to compromise and not admissible in evidence. It was offered and received on the part of the defendant firm, and they cannot now be heard to complain of its reception in evidence. It is further claimed that it contains admissions made at a time and in such manner that they should not be given any, or if any, very little weight. It is true they were written by the attorney for plaintiffs, but were read by the member of the firm then representing it and signed after he expressed himself as fully satisfied of the correctness of the matters set forth, and in part it but repeated what had been voluntarily declared two or three times by the same party who signed the statement for the firm, and seems entitled to be given credit when viewed in connection with all the facts and circumstances surrounding and attendant upon its making and others which tend to corroborate its statements. The order of the district court dissolving the attachment is reversed and the branch of the cause now before us remanded to the district court for further proceedings.

REVERSED AND REMANDED.